UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STACI STOGNER | CIVIL ACTION |
| VERSUS | NO: 07-4058 |
| NEILSEN AND HIEBERT SYSTEMS, INC., ET AL. | SECTION: R |

**ORDER AND REASONS**

Before the Court is defendant Illinois Tool Works' Motion for Summary Judgment. R. Doc. 162. For the following reasons, the Court DENIES the motion.

I.  BACKGROUND

On January 27, 2007, Stacey Stogner was involved in a machine accident at the Temple-Inland Paper Mill in Bogalusa, Louisiana. He passed away several days later, leaving behind his wife, plaintiff Staci Stogner, and two children, Alexander and Austin Stogner. Plaintiff commenced the present action on August 10, 2007, naming Neilsen and Hiebert Systems as the defendant. On January 17, 2008, plaintiff amended her complaint to add six corporate defendants, including Illinois Tool Works (ITW).

Mr. Stogner was injured while working as a scaleman for the No. 8 paper machine at the Bogalusa mill. The machine was connected to a "strapper," which is a device that affixes metal straps to rolls of paper. Plaintiff contends that Stogner's injury occurred while he was attempting to replenish the material that is used to feed the strapper. Stogner allegedly turned the strapper's service switch to the "on" position, which should have de-energized the machine, so that he could safely perform his task. The strapper did not properly de-energize, however, and Stogner was pinned between a large roll of paper and the frame of the strapper.

Plaintiff alleges that the strapper was defectively designed and/or manufactured. It is undisputed that ITW manufactured the strapper in question. Plaintiff has asserted products liability claims against ITW and others under the Louisiana Products Liability Act. She recently reached settlement agreements with all of the defendants except for ITW. ITW has now filed a motion for summary judgment, which the Court addresses as follows.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be

satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish that a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

The Louisiana Products Liability Act (LPLA) "establishes the exclusive theories of liability for manufacturers for damage

caused by their products." LA. REV. STAT. § 9:2800.52. The LPLA provides that "[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by claimant or another person or entity." *Id.* § 9:2800.54(A). A product can be "unreasonably dangerous" in four different ways: (1) construction or composition; (2) design; (3) lack of an adequate warning, or (4) lack of conformity to express warranties. *Id.* § 9:2800.54(B). Among other things, the plaintiff must prove that the characteristic of the product that made it unreasonably dangerous existed at the time the product left the manufacturer's control or, for design defects, was the result of a reasonably anticipated alteration. LA. REV. STAT. § 9:2800.54(c).

In a five-page memorandum devoid of any case citations, ITW argues that plaintiff cannot prove that the allegedly dangerous characteristics of the strapper existed at the time the machine left ITW's control. It argues that the evidence shows that unanticipated alterations were made to the strapper after it was installed and that those alterations, rather than the machine's construction or design, rendered the strapper unreasonably dangerous. Specifically, ITW claims that: (1) the strapper's

-4-

"interlock system,"[1] which is supposed to de-energize the machine when the machine is switched into "service" mode, was disconnected after the strapper was installed; and (2) the chute leading to the strapper was replaced with a different chute type.

ITW does not explain how the second alteration, the chute replacement, might have affected the dangerousness of the strapper and caused Stogner's death. As such, the Court cannot determine how a finding that the chute replacement was unanticipated would have any effect on ITW's liability. ITW has not shown that it is entitled to judgment as a matter of law on this issue, and its motion for summary judgment must therefore be denied in that respect. FED. R. CIV. P. 56(c).

As for the interlock system, ITW cites the testimony of its employee, John Hicks, who states that he "made sure" that the interlock system was "hooked up" at the time the strapper was installed. Hicks Depo., R. Doc. 171-3 at 7.[2] If a disconnected interlock system rendered the strapper unreasonably dangerous, ITW argues, the disconnection must have occurred after the machine left ITW's control.

Plaintiff appears to agree that the interlock system was

---

[1] An interlock is a safety device that stops a machine from functioning when activated. For example, many washing machines come equipped with an interlock that disables the spin cycle when the lid is opened.

[2] Record citations are to the CM/ECF document and page number.

-5-

properly connected at the time the strapper was installed.  She
claims, however, that the strapper suffered from a design defect
because the interlock system was designed to be activated by a
"positive" signal rather than a "negative" signal.  In other
words, the machine was designed to function normally so long as
no charge was running between the service key and the interlock.
When the service key was turned to the "on" position for
maintenance, however, the charge would start running and the
machine would temporarily stop functioning.  Plaintiff argues
that this feature rendered the strapper unreasonably dangerous
because it was foreseeable that the wires connecting the service
key with the interlock system would deteriorate over time and
that the interlock system would no longer be able to disable the
machine for maintenance.  According to plaintiff's expert
witness:

> Because the [programmable logic controller] never requires a
> positive signal from the service key interlock, a physical
> disabling of the interlock, even if accidental, never causes
> the disruption of the conveyor system.  The similar failure
> of any other strapper interlock would cause a disruption of
> the conveyor system.

Morse Aff., R. Doc. 168-3 at 13.  The expert also expressed his
opinion that the alternative design would have been inexpensive
and easy to implement.  *Id.*

In addition to the expert's affidavit, defendant Neilsen and
Hiebert Systems has submitted the testimony of several paper mill
employees.  The employees claim that the strapper interlock was

never connected to the strapper's conveyor system in the first place and thus would not have prevented the accident even if it had been functioning properly. *See* Boyd Depo., R. Doc. 188-3 at 9 ("Prior to [my recommendation that the service key be tied to the conveyor system], the service key was not tied into the conveyor system."); Forbes Depo., R. Doc. 188-4 at 11 ("Q: And, to your knowledge, did this service key have any relationship to the conveyors before Mr. Stogner's accident? A: No."); Jenkins Depo., R. Doc. 188-5 at 8 ("Q: Before the accident ... it was your understanding -- well, it was not your understanding that the key had anything to do with the conveyors, is that correct? A: Correct. Yes."); James Depo., R. Doc. 188-7 at 54 ("Q: Based on your schooling and training for work on the Number 8 roll handling system, did that key, to your knowledge before Mr. Stogner's accident, have anything to do with the conveyor operation? A: No.").

There is sufficient evidence that the strapper contained one or two dangerous features at the time it left ITW's control. If the jury were to believes plaintiff's expert, it could reasonably find that ITW designed the strapper's interlock to be activated through a "positive" signal. Alternatively, if the jury were to believe the paper mill employees, it could reasonably find that ITW designed the strapper's interlock so that it was never connected with the machine's conveyor. Either way, there is a

genuine issue of material fact as to whether the alleged defects existed at the time the strapper left ITW's control. ITW has not addressed the other elements of a products liability claim, and the Court therefore declines to address them. Summary judgment must be denied.

**IV. CONCLUSION**

For the foregoing reasons, ITW's Motion for Summary Judgment is DENIED.

New Orleans, Louisiana, this **2nd** day of April, 2009.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE